UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMAL T. EVERETT,

       Petitioner,

    v.

M.D. MCDONALD,

       Respondent.

Case No. 10-cv-04323-CW (PR)

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS; DENYING
CERTIFICATE OF APPEALABILITY

Petitioner Jamal T. Everett, a state prisoner proceeding pro se, filed this amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state criminal conviction, asserting the following four claims: (1) violation of his Fifth Amendment rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966); (2) violation of his right to a fair trial by the trial court's failure to instruct sua sponte on a lesser included offense; (3) violation of his right to a public trial; and (4) violation of his right to effective assistance of trial counsel.  Respondent has filed an answer and a memorandum of points and authorities in support thereof and Petitioner has filed a traverse.  For the reasons discussed below, the Court DENIES the petition and a certificate of appealability.

BACKGROUND

I. Procedural History

    On June 15, 2004, a complaint was filed charging Petitioner

United States District Court
Northern District of California

and two co-defendants with the murder of Jose Roberto.  People v. Everett, 2009 WL 5153747, *3 (Cal. Ct. App.) (unpublished).  The complaint alleged that Petitioner intentionally murdered Roberto by discharging a firearm from a motor vehicle and that he personally and intentionally used and discharged a firearm, causing death.  Id.  Although Petitioner was seventeen at the time of the offense, he was tried as an adult.  Id. at *4.  By the time the case came to trial in 2008, Petitioner was no longer a minor.  Id.  On May 19, 2008, Petitioner's case was severed from that of his co-defendants for trial.  Id.  On June 9, 2008, a jury found Petitioner guilty of second degree murder and found true the allegations that he personally used a firearm, causing death.  Id.  On July 29, 2008, Petitioner was sentenced to forty years to life in prison.  Id.

Petitioner submitted two claims on direct appeal: (1) a Miranda violation; and (2) trial court error in failing to instruct on a lesser included offense.  On December 10, 2009, the California Court of Appeal affirmed the judgment in an unpublished opinion.  Ex. 10; Everett, 2009 WL 5153747.  On March 10, 2010, the California Supreme Court denied review.  Ex. 12.

On September 24, 2010, Petitioner filed a timely petition for a writ of habeas corpus in this Court.  Dkt. No. 1.  On February 2, 2011, the Court granted Respondent's motion to dismiss the petition as unexhausted.  Dkt. No. 7.  On March 1, 2011, the Court ordered the proceedings stayed so Petitioner could exhaust his unexhausted claims.  Dkt. No. 14.

On June 16, 2011, Petitioner filed a petition for a writ of habeas corpus in the Alameda County Superior Court, asserting two

United States District Court
Northern District of California

claims: (1) the violation of his right to a public trial; and
(2) ineffective assistance of trial counsel.  Ex. 13.  On August
12, 2011, the Superior Court denied the petition as untimely and
failing to state a prima facie case for relief.  Ex. 14.  On
March 5, 2012, Petitioner filed a petition for a writ of habeas
corpus in the California Supreme Court, which was summarily
denied on June 13, 2012.  Exs. 15 & 16.

On July 12, 2012, Petitioner notified this Court that the
California Supreme Court had denied his petition and moved to
reopen the action and lift the stay.  Dkt. No. 27.  On March 8,
2013, the Court lifted the stay and directed Petitioner to file
an amended petition, which he filed on April 11, 2013.

II. Statement of Facts

The following is a summary of facts taken from the Court of
Appeal opinion.  On the evening of September 26, 2003, Petitioner
and two other young men were driving in Oakland in a gray Toyota
Cressida.  Everett, 2009 WL 5153747, at *2.  Petitioner was in
possession of a nine-millimeter Glock pistol with about eight
bullets in it, which he had purchased the preceding day.  Id.
Petitioner's friend, Steve Bell, had a black .38-caliber
revolver.  Id.  Timothy Allen was driving the car.  Id. at *3.
Because Petitioner and Bell both had guns, they decided they
"might as well go get some of the people that they were having
problems with."  Id.  One of the people they discussed was named
J.D.  Id.

The three men drove along Coolidge Avenue where they thought
their target would be.  Id.  Petitioner spotted some people,
pointed them out, urged Bell to shoot, and then to shoot again.

United States District Court
Northern District of California

3

1    Id.  After Bell fired two shots, Petitioner "got out the window"

2    and started to shoot his own gun, firing over the roof of the car

3    in the direction of the driver's side.  Id.  Petitioner and Bell

4    emptied their guns and drove away.  Id.

5        There were five or six people in the group at whom

6    Petitioner and Bell were firing.  Id.  Petitioner was aiming at

7    the person he knew as J.D.  Id.  According to Petitioner, he was

8    shooting at J.D. in order to scare him and induce him to leave

9    Petitioner's friend alone.  Id.  He told police that he did not

10   intend to kill J.D., but acknowledged that he was aiming at him

11   and trying to shoot him, and was aware that J.D.'s death could

12   result.  Id.

13       J.D. was not shot, but an individual in the group named Jose

14   Roberto was shot in the head and killed.  Id. at *2.  Petitioner

15   said he did not intend to kill Roberto.  Id. at *3.  A firearms

16   expert testified at Petitioner's trial that Petitioner's gun

17   fired the casings found on the street at the crime scene.  Id. at

18   *2.  The expert testified that the markings on the nine-

19   millimeter bullet recovered from Roberto's body indicated that it

20   had probably been fired from a Glock, although he could not say

21   for certain that it was the same Glock that fired the casings.

22   Id.

23                          LEGAL STANDARD

24       A federal court may entertain a habeas petition from a state

25   prisoner "only on the ground that he is in custody in violation

26   of the Constitution or laws or treaties of the United States."

27   28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death

28   Penalty Act (AEDPA) of 1996, a district court may not grant

United States District Court
Northern District of California

4

United States District Court
Northern District of California

habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. Id. at 409. Under AEDPA, the writ may be granted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). In the present case, the highest court to issue a reasoned decision on the Miranda and jury instruction claims is the California Court of Appeal and the highest court to issue a reasoned decision on the public trial and ineffective assistance of counsel claims is the Alameda County Superior Court.

DISCUSSION

I. Miranda Violation

A. Federal Authority

Miranda requires that a person subjected to custodial interrogation be advised that "he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney." 384 U.S. at 444. The warnings must precede any custodial interrogation, which occurs whenever law enforcement officers question a person after taking that person into custody or otherwise significantly deprive a person of freedom of action. Id. The requirements of Miranda are "clearly established" federal law for purposes of federal habeas corpus review under 28 U.S.C. § 2254(d). Juan H. v. Allen, 408 F.3d 1262, 1271 (9th Cir. 2005).

If a suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney," all questioning must cease. Miranda, 384 U.S. at 444-45. A suspect

who has expressed a desire to have counsel present during

custodial interrogation therefore is not subject to further

interrogation by the authorities until counsel is made available

to him, unless the suspect himself initiates further

communication with the police.  Edwards v. Arizona, 451 U.S. 477,

484-85 (1981).

B. Court of Appeal Opinion

The California Court of Appeal denied this claim as follows:

> The trial court held an evidentiary hearing
> on appellant's motion to suppress his
> statements to the police.  The evidence at
> that hearing was as follows.  On June 11,
> 2004, FN4 Sergeant Phil Green of the Oakland
> Police Department and his partner, both
> wearing plain clothes, picked appellant up at
> Juvenile Hall and transported him to the
> Oakland Police Department Homicide Section
> for questioning.  Although Green was not in
> uniform, he was wearing his police badge in a
> visible location, but appellant denied seeing
> it.  Appellant was not given Miranda FN5
> warnings at Juvenile Hall before being taken
> to the police station.  According to Green,
> between the time he met appellant at Juvenile
> Hall until he was placed in an interrogation
> room at the police station, appellant never
> requested that he be given an attorney or
> allowed to call his mother.
>
>     FN4  This date was about a month before
>     appellant's 18th birthday.
>
>     FN5 Miranda v. Arizona (1966) 384 U.S.
>     436.
>
> According to appellant, he was alarmed when
> two men in plain clothes picked him up from
> Juvenile Hall and refused to tell him who
> they were, or anything other than that they
> were taking him "downtown."  Appellant
> testified that before leaving Juvenile Hall,
> he asked to call his mother or a lawyer, but
> was not permitted to do so.  He asserted that
> a Juvenile Hall employee, Bennie Elzy,
> overheard him making this request and asked
> why he wanted a lawyer, and that he then
> repeated it, explaining that he wanted to

call his mother or his lawyer so that they
could meet him "downtown."

Appellant called Elzy as a witness at the
evidentiary hearing, but she testified that
she did not remember the incident due to the
passage of time, and did not recall one way
or the other whether she heard appellant ask
the police to let him make a call.  She
acknowledged, however, that it was not
unusual for minors at Juvenile Hall to ask
officers or the staff to let them make a
phone call to a parent or a lawyer.  Elzy had
known appellant through her work since he was
about 12 or 13 years old, and he was "just
like any other kid" in terms of his
willingness to ask questions or make
requests.

Appellant was put into the interrogation room
at about 6:20 p.m., without having been given
any Miranda warnings.  Between then and 11:17
p.m., the police interviewed appellant's
codefendants, Allen and Bell.  Appellant
testified that during this time, the police
came into the interrogation room, showed him
a photograph, and asked him who it was.
Appellant averred that he again asked to call
his mother or a lawyer during this
conversation, but was not permitted to do so
at that time or afterwards.  In contrast,
Green testified that he did not talk to
appellant between the time he was put into
the interrogation room and 11:17 p.m., and
the police log regarding appellant's stay in
the interrogation room did not reflect that
the police had any substantive contact with
appellant during that period.  The police did
show appellant a photograph of the crime
scene, but this occurred later on, during the
tape-recorded interview.

At 11:21 p.m., Green returned to the room,
and told appellant that he was suspected of
being involved in a shooting, and that the
police wanted to talk to him about it.  Green
testified that he gave appellant Miranda
warnings at this time, and then he and his
partner questioned appellant in an unrecorded
conversation for about an hour.  Appellant
denied having been advised of his rights
before the police started questioning him.
He acknowledged, however, that before he was
advised of his Miranda rights, the police
told him that he was being questioned in
connection with a murder.  FN6

8

FN6 There is an inconsistency in
appellant's testimony in this regard.
On redirect examination, he testified
that the reason he asked to call a
lawyer or his mother on this occasion
was that he had been told he was being
questioned about a murder, and knew that
this was a serious offense.  In his
direct testimony, however, he stated
that his request for a phone call was
made before he left Juvenile Hall, and
that he did not know at that time why
the men who had come to collect him were
taking him downtown.

According to Green, appellant did not
ask to talk to his mother or to a lawyer
at any time during the interrogation.
At trial, Green testified again that at
no time between Green's first contact
with appellant at Juvenile Hall and the
end of their interviews did appellant
ever ask to call his mother or a lawyer.

Appellant acknowledged that after he started
talking to the police, they did give him
Miranda warnings, and that he did not ask for
a lawyer or ask to talk to his mother after
they had done so.  Appellant then gave the
three tape-recorded statements that were the
subject of his motion to suppress.  At the
start of the first tape-recorded interview,
Green noted that appellant had been given
Miranda warnings and reiterated their
content.  Appellant confirmed on the tape
that he had been given the warnings, and that
he had agreed to talk to the police after
receiving them.

Green testified that his custom and practice
was to allow juvenile suspects to call their
parents upon request; that appellant never
made such a request during the unrecorded
portions of their encounter; and that if
appellant had asked to call his mother, Green
would have permitted him to do so.  As an
example, Green testified that when
appellant's codefendant, Bell, asked for a
lawyer during a follow-up interview with the
police, Green and his partner memorialized
the request in their notes, and then
immediately concluded the interview and left.
Green acknowledged, however, that he did not
tell appellant that he could make any phone
calls, did not tell him how he could get a

United States District Court
Northern District of California

lawyer, and did not offer him a chance to use a telephone.

At the conclusion of the evidentiary hearing, the court engaged in a colloquy with appellant's trial counsel, and confirmed that counsel did not have any evidence corroborating appellant's testimony. Appellant's trial counsel then acknowledged that the issue boiled down to one of credibility as between Green and appellant. The court pointed out that by the time of his interview with the police in this case, appellant had extensive prior experience with the juvenile justice system, had been given Miranda warnings on several occasions, had waived those rights and given statements in the past, and had expressly waived them during the tape-recorded portion of his interview in this case.  The court also took note that at the end of the interview, when the police asked appellant if they had "treat[ed][him] all right" during his encounter with them, appellant responded affirmatively.

The trial court denied the motion "based upon the totality of the circumstances and everything that has been in front of th[e] court," without expressly stating on the record that the court was making a factual finding that appellant did not ask to call his mother or an attorney.  In context, however, it is clear from the trial court's remarks that the motion hinged on a straightforward credibility issue, which the court resolved adversely to appellant.  Thus, we read the record as including an implied factual finding by the trial court that appellant did not in fact invoke his right to contact his mother or an attorney, either before or during his interview by the police. This implied finding is one of historical fact, which we must affirm if it is supported by substantial evidence. . . .

In this case, the trial court's implied finding is supported by Officer Green's unequivocal testimony that appellant did not ask to call his mother or an attorney at any time between the time he was picked up at Juvenile Hall to be taken to the police station and the end of his discussions with the police.  This testimony was corroborated by appellant's tape-recorded admission, toward the end of the interview, that the

police had treated him appropriately.  The
trial court's decision to reject appellant's
uncorroborated contrary testimony as not
credible is also supported by appellant's
prior history of waiving his rights after
receiving <u>Miranda</u> admonitions.

Appellant relies on authorities holding that
<u>uncontradicted</u> testimony that a minor suspect
asked to call a parent before or during an
interrogation must be considered sufficient
to show an invocation of the minor's Fifth
Amendment rights.  (<u>People v. Burton</u> (1971) 6
Cal.3d 375, 383-384.)  In the present case,
however, appellant's testimony was squarely
controverted by Green's.  Thus, these cases
are inapposite.  Under the applicable
standard of review, the record provides us
with no basis for reversing the trial court's
ruling denying appellant's motion to suppress
his statements.

<u>Everett</u>, 2009 WL 5153747, at *4-6 (emphasis in original)(footnote 7 omitted).

    C. Analysis

    Petitioner argues that the state appellate court

unreasonably denied his <u>Miranda</u> claim because he did ask to speak

to his mother or a lawyer, and he did so twice, first before he

left Juvenile Hall with the detectives and again after he arrived

at the police station.

    As the appellate court reasonably concluded, the trial

court's decision to deny Petitioner's motion to suppress, after

holding an evidentiary hearing on the issue, was based upon its

assessment of the credibility of Petitioner and of Oakland Police

Sergeant Green.  Petitioner's argument requires this Court to re-

determine the credibility of these witnesses.  However, this

Court must defer to the state court's finding regarding who was

the more credible witness because "no sort of factual finding []

is more appropriate for deferential treatment than [] a state

court's credibility determination."  <u>Knaubert v. Goldsmith</u>, 791

United States District Court
Northern District of California

11

1    F.2d 722, 727 (9th Cir. 1986).  "'Title 28 U.S.C. § 2254(d) gives

2    federal habeas courts no license to redetermine credibility of

3    witnesses whose demeanor has been observed by the state trial

4    court, but not by them.'"  Id. (quoting Marshall v. Lonberger,

5    459 U.S. 422, 434 (1983)).  The Supreme Court has stated, "When a

6    trial judge's finding is based on his decision to credit the

7    testimony of one of two or more witnesses, each of whom has told

8    a coherent and facially plausible story that is not contradicted

9    by extrinsic evidence, that finding, if not internally

10   inconsistent, can virtually never be clear error."  Anderson v.

11   City of Bessemer, N.C., 470 U.S. 564, 575 (1985).

12       At the evidentiary hearing, Petitioner and Sgt. Green gave

13   directly contradictory testimony that was not contradicted by

14   external evidence.  The trial judge's observations of the

15   witnesses' demeanor and tone of voice that "bear so heavily on

16   the listener's understanding of and belief in what is said" must

17   be given great deference.  See id.  Furthermore, as pointed out

18   by the appellate court, the credibility determination was

19   supported by Petitioner's testimony that he had been arrested

20   "numerous times" and had been given his Miranda rights on at

21   least five previous occasions, establishing his experience with

22   the police and his knowledge of his rights to remain silent and

23   ask for a lawyer.  Ex. 5, 5 Reporter's Transcript (RT) at 105-11.

24   Additional support for the court's credibility determination

25   comes from the fact that, at the end of the tape-recorded

26   interview, when Sgt. Green asked Petitioner if he had been

27   treated well, Petitioner responded, "Yes."  He did not say that

28   he had asked for a lawyer, but Sgt. Green did not allow him to

United States District Court
Northern District of California

12

have one and made him talk instead.   RT at 111.

Petitioner also argues the appellate court unreasonably found, based on the fact that he did not know at Juvenile Hall that he was going to be questioned about a murder, that his statements about asking twice to speak to his mother and a lawyer were inconsistent.  Petitioner contends his statements were not inconsistent because he knew at Juvenile Hall he was going to be questioned about a murder in that the police previously questioned his brother about Petitioner's involvement in a murder.  However, this argument is also belied by the trial court's determination that Petitioner was not a credible witness, to which this Court must defer.

For all of these reasons, the state court's denial of this claim was not an unreasonable application of Supreme Court authority or an unreasonable determination of the facts in light of the record evidence.

II. Failure to Instruct on Lesser Included Offense

Petitioner contends that the trial court erred in failing to instruct sua sponte on involuntary manslaughter as a lesser included offense.  In ruling on this claim, the Court of Appeal first noted that the jury's guilty verdict of second degree murder implied it found that Petitioner deliberately fired his gun into a crowd of people with conscious disregard for the danger to human life inherent in that act.  Everett, 2009 WL 5153747, at *7.  The Court of Appeal then rejected the claim on the ground that no substantial evidence supported a finding by a reasonable jury that Roberto's killing occurred unintentionally. An unintentional killing would require a finding that Petitioner

had acted "without due caution and circumspection" rather "than
with conscious disregard of a known danger to life" when he fired
his gun into a crowd of people.  Id.

A claim based on a state court's interpretation of its own
law and state law jury instructions is not cognizable on federal
habeas review.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991)
(that an instruction was incorrect under state law provides no
basis for habeas relief); see also Menendez v. Terhune, 422 F.3d
1012, 1029 (9th Cir. 2005) (state court's determination that,
under state law, insufficient evidence warranted a defense
instruction, was dispositive of instructional error claim).
Therefore, Petitioner's argument that the Court of Appeal
improperly applied California law does not create a basis for
federal habeas relief.

To the extent that Petitioner argues an involuntary
manslaughter instruction was required by the Due Process Clause,
it is refuted by the case law holding that due process requires a
trial court to give a jury an instruction on a lesser included
offense only when the evidence warrants it.  See Hopper v. Evans,
456 U.S. 605, 611 (1982); Menendez, 422 F.3d at 1029.  As the
Court of Appeal explained, Petitioner's statement to the police
that he did not intend to kill, taken in the context of the rest
of his statement that he knew "just by simply pulling the
trigger, there's a good chance you're gonna end up killing
somebody," and that "he was trying to shoot J.D.," did not
constitute evidence supporting an involuntary manslaughter
instruction.  Everett, 2009 WL 5153747, at *7.  The Court of
Appeal also reasonably found that a witness's testimony that he

United States District Court
Northern District of California

initially thought the gun could have been fired in the air rather than at the group of people was "far too slender a thread from which to hang the argument that substantial evidence supported an involuntary manslaughter instruction." Id. at *8.

III. Right to a Public Trial

Petitioner contends his right to a public trial was violated because his family and friends were not allowed in the courtroom during jury selection and the trial. Petitioner first presented this claim in his petition for a writ of habeas corpus in the Alameda County Superior Court, which denied it as untimely, noting that Petitioner had not demonstrated good cause for the delay or that his claim fell within any exception to the untimeliness bar. The California Supreme Court denied the petition without explanation; thus, it is assumed to have denied it on the same grounds as the Superior Court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Pham v. Terhune, 400 F.3d 740, 742 (9th Cir. 2005).

A federal court will not review questions of federal law decided by a state court if the decision rests on a state law ground that is independent of the federal ground and is adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). In cases in which a state prisoner has defaulted his claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice. Id. at 750.

California's practice of barring a petitioner from collaterally attacking his conviction if the filing is "substantially delayed" is an independent and adequate state procedural bar. Walker v. Martin, 131 S. Ct. 1120, 1130-31 (2011). Therefore, this claim is procedurally defaulted unless Petitioner can show cause and prejudice for the default or that a failure to consider this claim will result in a miscarriage of justice.

In his traverse, Petitioner argues that his delay in filing his state petition was caused by the fact that, after this Court granted his motion to stay his petition on March 1, 2011, he was transferred to another prison and was not given his property until June 16, 2011, after which he promptly filed his state petition. Petitioner also argues that he told his appellate counsel to raise this claim on appeal, but counsel responded that it "would not work for him." Apparently, Petitioner is arguing that his transfer and his appellate counsel's refusal constituted "cause" for his late-filed state petition.

The cause standard requires a petitioner to show that "'some objective factor external to the defense impeded counsel's efforts' to construct or raise the claim." McCleskey v. Zant, 499 U.S. 467, 493 (1991). Such objective factors include interference by officials that makes compliance with the state's procedural rule impracticable and a showing that the factual or legal basis for a claim was not reasonably available to counsel. Id. at 493-94.

Petitioner's reasons for his delay are not based on objective factors external to the defense. Even if Petitioner had filed his state petition immediately after this Court granted

16

a stay, it would have been filed approximately one year after the California Supreme Court denied review of his appeal, which would have already been untimely.  See In re Robbins, 18 Cal. 4th 770, 784 (1998) (petition not entitled to presumption of timeliness unless it is filed "within 90 days after the final due date for appellant's filing of the reply brief on the direct appeal").  And, because the factual basis of this claim was known to both trial and appellate counsel, Petitioner has not shown that an objective factor impeded counsel's ability to raise the claim.  Therefore, Petitioner has failed to show cause.  He also fails to argue prejudice.

He does argue that excluding this claim from review will cause a miscarriage of justice.  However, the "miscarriage of justice" exception is limited to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995) (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)); see Johnson v. Knowles, 541 F.3d 933, 936-38 (9th Cir. 2008) (miscarriage of justice exception limited to extraordinary cases where petitioner asserts his innocence and establishes the court cannot have confidence in the finding of guilt).  A petitioner must present evidence that creates a colorable claim that he is innocent of the charge for which he is incarcerated, as opposed to legal innocence as a result of legal error. Schlup, 513 U.S. at 321.  It is not enough that the evidence show the existence of reasonable doubt, a petitioner must show "that it is more likely than not that no 'reasonable juror' would have convicted him." Id. at 329.

17

Petitioner bases his claim of innocence on the fact that the prosecutor failed to disclose to the defense the testimony of the individuals contained on his witness list.  Undisclosed exculpatory evidence showing Petitioner was innocent might be sufficient to satisfy <u>Schlup</u>.  However, Petitioner does not indicate the nature of the undisclosed evidence.  It appears that his claim of innocence is based on the fact that the prosecutor placed on his witness list individuals whom he did not intend to call, in order to exclude them from the courtroom.  This does not show that Petitioner was actually innocent.

Therefore, this claim is procedurally barred from federal habeas review.

IV. Ineffective Assistance of Counsel.

Petitioner contends he received ineffective assistance of counsel on several grounds.  Petitioner first raised this claim in his petition for a writ of habeas corpus in the Alameda County Superior Court, which denied it as untimely and because he failed to state a prima facie case for relief.  For the reasons discussed above, unless Petitioner can show cause and prejudice or actual innocence, this claim is procedurally barred. Petitioner fails to argue cause and prejudice regarding this claim, and again fails to show actual innocence.  Therefore, the claim is procedurally defaulted.

Moreover, it fails on the merits.  To prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.

United States District Court
Northern District of California

Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  Second,
he must establish that he was prejudiced by counsel's deficient
performance, i.e., that "there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different."  Id. at 694.  A reasonable
probability is a probability sufficient to undermine confidence
in the outcome.  Id.  A "doubly" deferential judicial review is
appropriate in analyzing ineffective assistance of counsel claims
under § 2254.  Cullen v. Pinholster, 131 S. Ct. 1388, 1410-11
(2011); Harrington, 131 S. Ct. at 788; Premo v. Moore, 131 S. Ct.
733, 740 (2011).  The general rule of Strickland, to review a
defense counsel's effectiveness with great deference, gives the
state courts greater leeway in reasonably applying that rule,
which in turn "translates to a narrower range of decisions that
are objectively unreasonable under AEDPA."  Cheney v. Washington,
614 F.3d 987, 995 (9th Cir. 2010) (citing Yarborough v. Alvarado,
541 U.S. 652, 664 (2004)).  When § 2254(d) applies, "the question
is not whether counsel's actions were reasonable.  The question
is whether there is any reasonable argument that counsel
satisfied Strickland's deferential standard."  Harrington, 131 S.
Ct. at 788.

     A. Inadequate Consultation and Poor Communication

     Petitioner claims defense counsel came to see him only once
during the first three years of his incarceration, he did not
return phone calls and he missed several appointments with
Petitioner's family.  Petitioner raised these points at the

hearing on the <u>Marsden</u> motion[1] filed by counsel on behalf of
Petitioner.  At the hearing, counsel: (1) agreed with Petitioner
that he had not met with Petitioner since he represented him at
the preliminary hearing because his heavy caseload did not allow
him time to do so; and (2) stated that he did have conversations
with Petitioner's mother and missed an appointment with her but,
when he called her back, he could not reach her.  6 RT at 3-4, 6-
7.  The trial court denied the <u>Marsden</u> motion, noting that
Petitioner's counsel represented him at his preliminary hearing
so he knew about Petitioner's case and that any lack of
communication was due to counsel's heavy caseload rather than
lack of interest in the case.  6 RT at 8-9.

"Adequate consultation between attorney and client is an
essential element of competent representation of a criminal
defendant."  <u>Turner v. Duncan</u>, 158 F.3d 449, 457 (9th Cir. 1998)
(citation omitted).  However, there is no minimum number of
meetings between counsel and client prior to trial necessary to
prepare an attorney to provide effective assistance of counsel.
<u>United States v. Olson</u>, 846 F.2d 1103, 1108 (7th Cir. 1988).  An
experienced attorney can elicit more information from one
interview with a client than a neophyte lawyer.  <u>Id.</u>

Because counsel represented Petitioner at his preliminary
hearing, as the trial court found, he was familiar with the facts
of Petitioner's case.  Petitioner's dissatisfaction with the

---

[1]<u>People v. Marsden</u>, 2 Cal. 3d 118, 123 (1970), held that a trial
court must hold a hearing on a criminal defendant's motion to
substitute counsel to determine if the right to assistance of
counsel would be substantially impaired if the motion were not
granted.

United States District Court
Northern District of California

1   number of meetings he had with his attorney does not establish

2   deficient performance.  See Olson, 846 F.2d at 1108.  To the

3   contrary, at Petitioner's sentencing hearing, the trial court

4   stated that counsel's performance, especially his closing

5   argument, was a key factor in the jury returning a verdict of

6   second degree instead of first degree murder.  5 RT at 554-55.

7       Petitioner also fails to establish prejudice as a result of

8   the few consultations because he does not indicate what further

9   consultation would have achieved.  See United States v. Rogers,

10  769 F.2d 1418, 1425 (9th Cir. 1985) (to establish prejudice,

11  petitioner must indicate what further consultation with attorney

12  would have revealed).

13      B. Counsel Violated Attorney-Client Privilege

14      Counsel's duty of loyalty and duty to avoid conflicts of

15  interest are two essential components of reasonable performance

16  by criminal defense counsel.  McClure v. Thompson, 323 F.3d 1233,

17  1241 (9th Cir. 2003) (citing Strickland, 466 U.S. at 688).

18  Counsel's duty to keep the client's confidences, in all but a few

19  limited circumstances, is a critical component of reasonable

20  representation such that a departure from this rule "'make[s] out

21  a deprivation of the Sixth Amendment right to counsel.'"  Id. at

22  1242-43 (citing Nix v. Whiteside, 475 U.S. 157, 171 (1986)).

23      Petitioner contends that counsel breached the attorney-

24  client privilege by discussing his case with Tracy Smith, another

25  of counsel's clients, who was housed in the same pod as

26  Petitioner.  Petitioner brought this up at the Marsden hearing

27  and counsel said he did not tell Smith "one word about

28  Petitioner's case."  6 RT at 5.  In his amended petition,

United States District Court
Northern District of California

21

1    Petitioner contends that at a later <u>Marsden</u> hearing,[2] counsel

2    admitted that he may have told Smith that he represented a guy

3    charged with a drive-by shooting, but also said he did not

4    discuss the details of any client's case with any other client.

5    Am. Pet. at 11-12.  Petitioner argues that counsel's discussion

6    with Smith prejudiced him because Smith could have falsely

7    testified at Petitioner's trial to get a reduced sentence.

8         Even if counsel did mention to Smith that he represented

9    someone who was charged with a drive-by shooting, Petitioner does

10   not establish prejudice because Smith did not testify at

11   Petitioner's trial.  Petitioner's speculation about Smith does

12   not show that, but for counsel's deficient performance, there is

13   a reasonable probability the result of the trial would have been

14   different.

15        C. Counsel Sent Wrong Discovery to Petitioner

16        Petitioner contends that counsel sent him the wrong

17   paperwork regarding his case more than once and did not send him

18   the correct paperwork and his taped statement until one year

19   before the trial.  Am. Pet. at 12.  At the <u>Marsden</u> hearing,

20   counsel explained that he had asked his secretary to send

21   Petitioner the paperwork and there was a letter in the file

22   indicating the paperwork had been mailed but, because his

23   secretary had sent it, he could not vouch with certainty that it

24   was the correct discovery.  The record shows that counsel

25   obtained a court order allowing Petitioner to have a tape player

26

27   _____

28   [2]Respondent was not provided with a transcript of the second
     <u>Marsden</u> hearing as part of the record on appeal and, therefore,
     it is not part of the record here.

United States District Court
Northern District of California

on April 11, 2007, over one year before trial commenced.  1 CT at
274.  Petitioner claims that he was prejudiced by the late
delivery of the correct paperwork because it denied him "a chance
to study his case," and to file motions on his own behalf when
defense counsel failed to do so.  Trav. at 12.

Petitioner's receipt of his paperwork and the tape more than
one year before his trial allowed him adequate time "to study his
case" before trial and he could not have filed motions pro se
while he was represented by counsel.  See People v. Williams, 58
Cal. 4th 197, 255 (2013) (criminal defendant has no right to
"hybrid representation," that is, to be represented by an
attorney and also to represent himself); People v. Moore, 51 Cal.
4th 1104, 1119-20 (2011) (criminal defendant has right to have an
attorney represent him and the right to represent himself, but
these rights are mutually exclusive).

D. Counsel Rarely Came to Court Hearings

Petitioner contends defense counsel rarely came to
Petitioner's court hearings.  Am. Pet. at 12.  However, the
record shows that counsel appeared for Petitioner at the
preliminary hearing, numerous other court hearings, trial and
sentencing.  1 Clerk's Transcript (CT) at 7-248 (preliminary
hearing), 255; 257; 259; 260; 265; 270; 271 (Marsden motion
hearing); 272; 277-78; 287-321; 234-57 (jury trial); 361-79 (jury
trial); 430 (sentencing hearing).  Another attorney appeared for
defense counsel at several scheduling conferences.  Petitioner
fails to show how counsel's occasional use of substitute counsel
at scheduling conferences constituted deficient performance or
had any effect on the outcome of the trial.

United States District Court
Northern District of California

E. Defense Counsel Wanted to be Replaced

Petitioner contends that, at the Marsden hearing, defense counsel stated it would be in counsel's best interest if another attorney were appointed to represent Petitioner.  Am. Pet. at 13. Petitioner misinterprets counsel's statement.  At the hearing, counsel, noting that Petitioner was angry with him for a lack of communication, stated, "I don't know if I can do anything to make him happy with me, and perhaps it would be in his best interest to be able to get somebody else."  6 RT at 7.  Counsel clearly was stating he thought it would be better for Petitioner to have another attorney; he was not speaking about himself, as Petitioner contends.  Id.

Even if Petitioner is arguing counsel should have been dismissed because of his own dissatisfaction with counsel's performance, he fails to show ineffective assistance of counsel. See Morris v. Slappy, 461 U.S. 1, 14 (1983) (Sixth Amendment does not guarantee a "meaningful relationship" between an accused and his counsel; it only guarantees effective representation of counsel); United States v. Schaff, 948 F.2d 501, 505 (9th Cir. 1991) (Sixth Amendment does not entitle criminal defendant to an attorney who likes and feels comfortable with him).

F. Delayed Filing of Miranda Motion

Petitioner contends that counsel unreasonably delayed filing a motion to suppress until 2008, after one of his potential witnesses died in a car accident and the other witness was unable to remember what happened when the police took Petitioner from Juvenile Hall to the police station.  He argues that, if the motion had been filed and heard earlier, the witnesses would have

24

1    corroborated his testimony that, at Juvenile Hall, he had asked
2    the officers to let him speak to his mother or to a lawyer and
3    the judge would have then granted his motion to suppress his
4    inculpatory statement to the police.

5        Although defense counsel could have brought the motion to
6    suppress earlier in the process, his decision to file it once the
7    case was assigned to a trial court was reasonable.  When he made
8    this decision, he could not have known that one potential witness
9    would die and one potential witness would forget what, if
10   anything, Petitioner said at Juvenile Hall.  See Strickland, 466
11   U.S. at 690 (reasonableness of counsel's performance must be
12   viewed as of the time of counsel's conduct, not in hindsight).
13   Therefore, Petitioner has failed to show counsel was ineffective.

14       Petitioner also fails to meet his burden of showing
15   prejudice because he cannot show that, had the motion been filed
16   earlier, either witness would have testified favorably to him.
17   Therefore, he does not show that, but for counsel's error, "there
18   is a reasonable probability that the result of the proceeding
19   would have been different."  Id. at 694.

20       In summary, none of the grounds Petitioner raises shows that
21   counsel performed deficiently or that prejudice resulted from
22   counsel's alleged deficiency.  Habeas relief based on ineffective
23   assistance of counsel is denied.

24   V. Certificate of Appealability

25       No certificate of appealability is warranted in this case.
26   See Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C.
27   foll. § 2254 (requiring district court to rule on certificate of
28   appealability in same order that denies petition).  Petitioner

United States District Court
Northern District of California

25

has failed to make a substantial showing that any claim amounted to a denial of his constitutional rights or to demonstrate that a reasonable jurist would find this Court's denial of his claims debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The amended petition for a writ of habeas corpus is denied.

2. The Clerk of the Court shall to enter judgment and close the file.

IT IS SO ORDERED.

Dated: 04/02/2015

_____
CLAUDIA WILKEN
United States District Judge